In re James **MARTIN**, Debtor.

**Superior Metal Products, Plaintiff,**

v.

**James Martin, Defendant.**

No. 03–3117.

United States Bankruptcy Court, N.D. Ohio.

Oct. 18, 2004.

438

Derek A. Younkman, Lima, OH, for defendant.

Randy Lee Reeves, Lima, OH, for plaintiff.

### *DECISION AND ORDER*

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to determine dischargeability. At issue at the Trial was whether a debt arising from a check mistakenly sent to and then negotiated by the Defendant/Debtor should be excepted from discharge. At the conclusion of the Trial, the Court took the matter under advisement. The Court has now had the opportunity to fully consider the matter, and based upon a review of the arguments made by the Parties, together with the evidence presented, the Court finds that the debt arising from the Defendant negotiating the Plaintiff's mistakenly sent check is a Nondischargeable Debt.

The background facts underlying this matter began in November of 1999, when, by mistake, an employee of the Plaintiff sent to the Defendant a check in the amount of $36,500.00. The mistake itself arose because the Defendant, with whom the Plaintiff had previously transacted business, had a name very similar to that of the intended recipient. The Plaintiff, however, did not discover its error until the following March, when the intended recipient contacted the Plaintiff regarding a lack of payment on its account. Upon discovering its error, representatives of the Plaintiff met with the Defendant, with the Defendant at that time informing the representatives that all $36,500.00 of the funds represented by the Plaintiff's check had been spent. When asked for reimbursement, the Defendant informed the Plaintiff's representatives that he did not presently have and would not likely in the future have access to sufficient funds to cover the debt.

Based upon this course of events, a suit for conversion was then commenced in state court, with judgment thereafter being rendered in the Plaintiff's favor in January of 2001. The following year, the Defendant filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. In his petition, the Debtor listed the Plaintiff as the holder of a judgment lien in the amount of $36,500.00.

## DISCUSSION

The Plaintiff's complaint is brought pursuant to two statutory exceptions to the dischargeability of an individual debt: § 523(a)(2)(A), as a debt arising from a "false pretense[ ], a false representation, or actual fraud"; and § 523(a)(6), as a debt arising as the result of a "willful and malicious injury." As it relates to the first ground, § 523(a)(2)(A) requires a positive act—normally a representation—be made by the debtor in obtaining another's property. *See, e.g., Pisano v. Verdon (In re Verdon)*, 95 B.R. 877, 884 (Bankr. N.D.N.Y.1989) (a positive act is a prerequisite to a claim under § 523(a)(2)(A)). Here, however, no positive representation exits, the Parties being in agreement that the Defendant played absolutely no role in either the check being improperly issued or addressed. Thus, the Plaintiff's complaint to determine dischargeability will rest entirely upon the exception to discharge set forth in § 523(a)(6).

Section § 523(a)(6) excepts from discharge those debts which arise as the result of a debtor's "willful" and "malicious" actions. This exception to discharge is one of the oldest known in American bankruptcy jurisprudence—being part of the original Bankruptcy Act of 1898—and is aimed at the type of both socially and morally reprehensible conduct that is not deserving of the fresh-start policy which underlies the Bankruptcy Code. *Rupert, Jr. v. Krautheimer (In re Krautheimer)*, 210 B.R. 37, 47 (Bankr.S.D.N.Y. 1997). As with the other exceptions to dischargeability, it is the movant's burden to establish, by at least a preponderance of the evidence, the applicability of § 523(a)(6). *Grange Mut. Cas. Co. v. Chapman (In re Chapman)*, 228 B.R. 899, 906 (Bankr.N.D.Ohio 1998). In an action brought under § 523(a)(6), this means demonstrating that the debtor's conduct was both "willful" and "malicious," the two terms, as exhibited by statute's insertion of the word "and" in between, being distinct and separate concepts. *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 167 (Bankr.N.D.Ohio 2003).

In arguing for the applicability of the § 523(a)(6) exception to dischargeability, counsel for the Plaintiff stressed that the Defendant had been found liable for conversion in state court, arguing in this regard that, since judgment had been entered on a motion for summary, the doctrine of collateral estoppel would be applicable. However, as was previously set forth by this Court:

> In addressing this argument as it relates to the Plaintiff's cause of action under § 523(a)(6), dischargeability proceedings brought under § 523(a)(6) are determined by reference to federal law, and in this respect, while the act of conversion may give rise to a nondischargeable debt under § 523(a)(6), the mere act of conversion does not, for purposes of federal law, create a nondischargeable debt per se; as stated by the Supreme Court of the United States in *Kawaauhau v. Geiger*: 'not every tort judgment for conversion is exempt from discharge.' 523 U.S. 57, 63–64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

*J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 800–01 (Bankr.N.D.Ohio

2001). Thus, while they do appreciably overlap, liability for conversion does not automatically equate with the existence of a nondischargeable debt under § 523(a)(6). Accordingly, as a matter of law, the state court's finding of conversion does not invoke the doctrine of collateral estoppel, instead only being relevant to the extent that the factual circumstances giving rise to the finding of conversion are likewise violative of the conduct proscribed in § 523(a)(6).

In the case of *Kawaauhau v. Geiger*, the Supreme Court of the United States addressed the term "willful" as it is used in § 523(a)(6). 523 U.S. 57, 118 S.Ct. 974, 975, 977, 140 L.Ed.2d 90, 92 (1998). The specific factual question presented to the Court was whether a medical malpractice suit brought on the grounds of negligence met the "willful" standard of § 523(a)(6), a question which had divided the circuit courts. In looking to the language of the statute, the Supreme Court answered the question in the negative, stating, "[t]he word 'willful' in [§ 523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." 118 S.Ct. at 977. In making this statement, the Court was careful to note that the "(a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts." *Id.* 523 U.S. at 61–62, 118 S.Ct. at 977.

■ In conformance with Supreme Court's decision in *Kawaauhau*, and its eye toward equating § 523(a)(6) with an intentional tort, this Court, along with others, has held that § 523(a)(6)'s scope is limited to only those instances where a person acts with the specific intent to cause injury, or is substantially certain that, by his or her actions, an injury will occur. *Graffice v. Grim (In re Grim)*, 293 B.R. 156 (Bankr.N.D.Ohio 2003); *Gonzalez v. Moffitt (In re Moffitt)*, 254 B.R. 389, 396 (Bankr.N.D.Ohio 2000); *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298 (6th Cir. BAP 2004). Upon placing this standard against the facts of this case, certain conditions become prominent: the amount of the Plaintiff's check represented a very significant portion (possibly more than half) of the Defendant's yearly gross business income; the Defendant personally took care of all his accounts receivables; and, although the Defendant had previously conducted business with the Plaintiff, such business was not regular and never involved sums of money even close to the amount of the Plaintiff's check.

Weighed together then, what these conditions demonstrate is that the Defendant fully knew that he was not the intended recipient of the check sent by the Plaintiff; yet, in spite of such knowledge, he still proceeded to negotiate and then dissipate the funds from the check. For this reason, the Defendant's statement in rebuttal—that he did not consider it unusual to receive such a large remuneration—lacks complete credibility. Consequently, no matter the angle, there is simply no possible way for this Court to reach a conclusion other than the Defendant, by the act of negotiating the Plaintiff's mistakenly sent check, was substantially certain that an injury would occur to the Plaintiff's property. To hold otherwise, under the conditions just mentioned, would unduly raise the evidentiary bar on an action brought under § 523(a)(6) so as to make it almost impossible, without a direct admission, to establish the "willful" standard of the statute. Accordingly, it is this Court's finding that the Plaintiff has sustained its burden of establishing that, as applied to § 523(a)(6), the Defendant acted willfully.

■ Turning now to the issue of malice, the accepted definition of this word, as

applied to § 523(a)(6), is acts taken in conscious disregard of the debtor's duties or without just cause or excuse. *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986), *citing Tinker v. Colwell*, 193 U.S. 473, 486, 24 S.Ct. 505, 508, 48 L.Ed. 754 (1904). Based upon a fair reading of this definition, it is logical to assume that in great majority of cases, the same factual events that give rise to a finding of "willful" conduct, will likewise be indicative as to whether the debtor acted with malice. This case is no exception, with the conditions set forth above being demonstrative of the Defendant acting with malice toward the Plaintiff.

On the other hand, while no specific intent is required, the definition of malice requires a heightened level of culpability transcending mere willfulness. *Sateren v. Sateren (In re Sateren)*, 183 B.R. 576, 583 (Bankr.D.N.D.1995). Thus, in conformance with the separate nature of the two requirements, a debtor, in certain limited situations, may be found to have willfully converted a creditor's property, but not to have acted in a malicious manner. By way of example, in the case of *John Deere Credit Service v. In re McLaughlin (In re McLaughlin)*, a creditor, although found to have willfully converted a creditor's secured collateral, was held not to have had acted maliciously when the debtor "used the converted proceeds to start a business, and had realistic hopes that it would succeed." 109 B.R. 14, 18 (Bankr.D.N.H.1989). Similarly, in the case of *Rech v. Burgess (In re Burgess)*, a debtor was found to have acted willfully when, based upon his exercise of a power of attorney granted to him by his mother,

funds of his mother were converted for use in the debtor's farming business. 106 B.R. 612, 620 (Bankr.D.Neb.1989). However, based upon evidence that his mother had desired that her property was to be used to that end, the conduct was also found not to have been malicious. *Id.* 616–17.

Together then, these cases exemplify one of the minor, but important difference between § 523(a)(6)'s "willful" and "malicious" requirements: when, although motivated by self-interest, a debtor undertakes actions that are also intended, even if incidentally, to confer a benefit on the injured party, willfulness, but not malice, may be found to exist. Here, however, the facts are completely inapposite to this scenario—clearly no benefit, even of incidental value, was conferred upon the Plaintiff by the Defendant negotiating the mistakenly issued check. Even setting this aside, however, there exists for this Court an additional set of concerns.

In this case, the evidence shows that upon receiving the check from the Plaintiff, the Defendant did not deposit it in his normal business account, but instead placed the funds in a personal account. Equally important, the Debtor has never claimed, for tax purposes, the funds from the Plaintiff's check as income.[1] Thus, in concert, any reasonable interpretation of these actions leads to but one conclusion: the Debtor, in cashing the check, was attempting to keep the transaction secret. When considered in conjunction with those circumstances, as previously set forth, demonstrating the willfulness of the Defendant's actions, the weight of the evi-

---

1. Section 61(a)(1), of the Internal Revenue Code, requires taxpayers to report all income "from whatever source derived." It does not matter whether the income was derived lawfully or unlawfully. *Davis v. United States*, 226 F.2d 331, 334 (6th Cir.1955), *cert. denied*, 350 U.S. 965, 76 S.Ct. 432, 100 L.Ed. 838 (1956). As a result, the Defendant's failure to report the $36,500.00 in proceeds obtained from the Plaintiff's check may raise an issue with the IRS.

dence in this case tips heavily toward a finding that the Defendant's actions were taken in conscious disregard of his duties and without just cause or excuse. Accordingly, the sum of the circumstances presented in this case warrants a finding that the Defendant acted with "malice" for purposes of § 523(a)(6).

In conclusion, the Court finds that the Plaintiff has sustained its burden of demonstrating that the Defendant, in negotiating the mistakenly sent check, engaged in conduct that, as applied to § 523(a)(6), was both "willful" and "malicious." As such, the debt arising from the Defendant negotiating the Plaintiff's mistakenly sent check must be deemed to be a nondischargeable debt. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that, pursuant to 11 U.S.C. § 523(a)(6), the judgment entered under Civil Rule 56, in the Case of *Superior Metal Products v. James Martin,* in the Court of Common Pleas of Allen County, Ohio, in Case No. CV 2000–0578, be, and is hereby, determined to be a NONDISCHARGEABLE DEBT.