**In re Sergey DUBOVOY and Yuliya Dubovoy, Debtors.**

**Washington Mutual Bank, Plaintiff,**

**v.**

**Sergey Dubovoy and Yuliya Dubovoy, Defendants.**

**Bankruptcy No. 8:05–bk–21983–PMG. Adversary No. 8:06–ap–83–PMG.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 5, 2006.

Barbara A. Hart, Richard H. Malchon, Jr., Ruden, McClosky, Smith, Schuster & Russell, P.A., Tampa, FL, for Plaintiff.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the Motion for Summary Judgment filed by the Plaintiff, Washington Mutual Bank.

The Plaintiff commenced this action by filing a Complaint to Determine the Non-Dischargeability of Debt and Objecting to Discharge. In the Complaint, the Plaintiff alleges that it is a judgment creditor of the Debtors, Sergey Dubovoy and Yuliya Dubovoy, and that the debt owed to it by the Debtors should be excepted from the Debtors' discharge pursuant to § 523(a)(6) of the Bankruptcy Code. Additionally, the Plaintiff asserts that the Debtors' discharge should be denied pursuant to § 727(a)(5) because the Debtors have failed to explain satisfactorily a loss of assets.

### Background

The Debtors moved from the Republic of Moldova in eastern Europe to the United States in March of 1995. (Doc. 10, Deposition Transcript, pp. 6–7).

On August 22, 2001, the Debtors executed a Note in the principal amount of $90,000.00, payable to CTX Mortgage Company as the Lender. The Note was a thirty-year Note with interest to accrue at the rate of 6.875 percent per annum. (Doc. 1, Exhibit A). The Note was secured by a Mortgage on the Debtors' homestead real property located at 21 King Place, Westfield, Massachusetts. (Doc. 1, Exhibit B).

The Note and Mortgage were subsequently assigned to the Plaintiff.

On July 29, 2003, a representative of the Plaintiff erroneously executed a Discharge

of Mortgage stating that the Mortgage had been fully released and satisfied. (Exhibit to Doc. 7, Answer to Complaint). According to the Plaintiff, the error occurred after the Plaintiff "mistakenly applied a payoff check, intended for another WAMU mortgage loan, to the Debtors' Note." (Doc. 12, Affidavit of Joe P. Gates, Paragraph 5). The Discharge of Mortgage was recorded in the public records of Hampden County, Massachusetts.

The Debtors learned of the erroneous Discharge shortly after the mistake occurred, when the Plaintiff returned a check that had been tendered as the Debtors' monthly mortgage payment.

The Debtors contend that the Plaintiff was initially unaware of the error, and assured them that the loan had been satisfied.

The Plaintiff contends that the Debtors did not make any additional payments to the Plaintiff after the check was returned. (Doc. 12, Paragraph 6).

In late 2003 or early 2004, the Plaintiff discovered that the Mortgage had been mistakenly satisfied, and communicated with the Debtors in an effort to obtain their agreement to reinstate the Mortgage.

The Plaintiff asserts that it offered to reinstate the Mortgage pursuant to its original terms, and to amortize the interest that had accrued after the Debtors had discontinued their monthly payments. (Doc. 12, Paragraphs 7–8).

In response, the Debtors counter-proposed that they would agree to such reinstatement only on the condition that (1) the Plaintiff waive the interest that had accrued, (2) the Plaintiff reduce the interest rate from 6.875 percent to 5.5 percent, and (3) the Plaintiff pay all closing costs. (Doc. 12, Paragraph 9; Doc. 10, pp. 43–46).

No agreement was reached as to reinstatement of the Mortgage.

At some point during the year following the erroneous satisfaction of the Mortgage, the Debtors obtained a new loan in the amount of $70,000.00 from a Ukrainian bank known as Ukrainian Self Reliance. The new loan was secured by a mortgage on the Massachusetts property. According to the Debtors, they borrowed the money from Ukrainian Self Reliance for the purpose of repairing or remodeling the home. (Doc. 16, Transcript, pp. 21–22).

On June 25, 2004, the Debtors sold the home in Massachusetts for the sale price of $165,000.00. After payment of the mortgage held by Ukrainian Self Reliance and various closing costs, the Debtors received net proceeds from the sale in the amount of $87,101.06. (Doc. 10, Deposition Transcript, Exhibit 3; Doc. 12, Paragraph 11).

The Debtors had not notified the Plaintiff of the sale prior to its closing, and did not remit any of the sale proceeds to the Plaintiff.

Shortly after selling the home in Massachusetts, the Debtors moved to Florida.

On November 10, 2004, the Plaintiff filed a breach of contract action against the Debtors in the State Court in Massachusetts. (Doc. 12, Paragraph 13).

On July 25, 2005, a Judgment was entered in the State Court action in favor of the Plaintiff, and against the Debtors, in the amount of $108,117.55, plus attorney's fees and costs in the amount of $9,061.38. (Doc. 1, Exhibit D).

On October 6, 2005, the Debtors filed a petition under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the Middle District of Florida.

The Debtors did not list any real property on their Schedule of Assets filed in the bankruptcy case. On their Schedule of Personal Property, the Debtors listed as-

sets with a total value of $13,350.00, consisting primarily of three vehicles, their household furnishings, and a security deposit held by their landlord.

The Debtors disclosed two creditors on their original Schedule of Creditors Holding Secured Claims. The two creditors were (1) the Plaintiff, listed as a secured creditor holding a judgment in the amount of $117,178.93, and (2) the law firm that represented the Plaintiff in the State Court action, listed as a secured creditor holding a judgment in the amount of $9,061.38.

The Debtors filed their original "Schedule F–Creditors Holding Unsecured Nonpriority Claims" on November 7, 2005, approximately one month after the bankruptcy petition was filed. (Doc. 7). On the original Schedule F, the Debtors stated that they had no unsecured creditors.

Approximately one week later, on November 14, 2005, the Debtors filed a revised Schedule F. (Doc. 9). On the revised Schedule, the Debtors listed four creditors holding unsecured claims in the aggregate amount of $905.25.

On February 10, 2006, the Plaintiff filed the Complaint to Determine Non–Dischargeability of Debt and Objecting to Discharge that initiated this adversary proceeding.

In Count I of the Complaint, the Plaintiff requests that the Court determine that the debt owed to it is nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code, because it is a debt for a willful and malicious injury by the Debtors to the Plaintiff or to property of the Plaintiff. The Plaintiff asserts that the willful and malicious injury occurred as a result of the Debtors' failure to remit the proceeds received from the sale of the home in Massachusetts.

In Count II of the Complaint, the Plaintiff requests that the Court deny the Debtors' discharge pursuant to § 727(a)(5) of the Bankruptcy Code, based on the Debtors' failure to explain satisfactorily a loss of assets. The Plaintiff asserts that the Debtors received a check in the amount of $87,101.06 from the sale of the home in Massachusetts, but "could only generally describe the dissipation of $40,500.00 of the $87,101.06 representing the Sale Proceeds." (Doc. 1, Paragraph 30).

The matter currently before the Court is a Motion for Summary Judgment filed by the Plaintiff. In the Motion, the Plaintiff contends that there are no genuine issues of material fact, and that it is entitled to the entry of a judgment in its favor on both Count I and Count II of the Complaint.

### Discussion

Rule 56 of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides for the entry of a summary judgment if the pleadings, discovery, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Court's focus in evaluating a motion for summary judgment is whether the pleadings and papers filed in the case create a genuine factual dispute, such that the issue must be presented to a factfinder for resolution, or whether the submissions are so one-sided that the moving party must prevail as a matter of law. *In re Garcia*, 2002 WL 31409580, at *2 (S.D.Fla.).

Under Rule 56(c), the existence of a factual dispute precludes the entry of a summary judgment, if the factual dispute involves a matter that will affect the outcome of the litigation. In determining whether an issue exists regarding a mate-

rial fact, the court must consider all of the evidence in the light most favorable to the non-moving party. *In re Paramount Citrus, Inc.*, 268 B.R. 620, 624 (M.D.Fla.2001).

**A.  Count I— § 523(a)(6)**

■  Section 523(a)(6) of the Bankruptcy Code provides:

**11 USC § 523.    Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) *for willful and malicious injury* by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6)(Emphasis supplied). For a debt to be nondischargeable under § 523(a)(6), the creditor must show that the debtor's conduct was both willful and malicious.

Specifically, for purposes of § 523(a)(6), the United States Supreme Court has found that the word "willful" modifies the word "injury," "indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

■  Additionally, the word "malicious" is defined as "conduct taken in conscious disregard of one's duties or without just cause or excuse." *In re Little*, 335 B.R. 376, 383–84 (Bankr.N.D.Ohio 2005) (citing *Tinker v. Colwell*, 193 U.S. 473, 486, 24 S.Ct. 505, 48 L.Ed. 754 (1904)). The term "malicious" requires "a heightened level of culpability transcending mere willfulness." *In re Little*, 335 B.R. at 384(quoting *In re Martin*, 321 B.R. 437, 442 (Bankr. N.D.Ohio 2004)).

■  In determining a dischargeability action under § 523(a)(6), Courts generally consider the totality of the facts and circumstances. *In re Trantham*, 286 B.R. 650, 659 (Bankr.W.D.Tenn.2002). Malice can be established, for example, "on an implied basis from a showing of debtor's behavior, as well as a presentation of the surrounding circumstances." *In re Davis*, 262 B.R. 663, 671 (Bankr.E.D.Va.2001). "The court should look to the totality of the circumstances to determine whether a debtor acted with malice." *In re Penton*, 299 B.R. 701, 704 (Bankr.S.D.Ga.2003).

In this case, it is undisputed that the Debtors sold the home in Massachusetts and did not remit any of the sale proceeds to the Plaintiff. It is also undisputed that the Debtors knew that the home had served as collateral for the debt owed to the Plaintiff, and that the collateral had been released only because of an error on the Plaintiff's part. (Doc. 1, Exhibit C; Doc. 12, pp. 15–19).

The Court has considered all of the circumstances surrounding the Debtor's failure to turn over any of the sale proceeds to the Plaintiff, and finds that the conduct was willful and malicious within the meaning of § 523(a)(6) of the Bankruptcy Code. In reaching this determination, the Court has considered the following factors:

1.  The Debtors understood that they remained obligated to the Plaintiff in the amount of $87,000.00, even after learning that the Discharge of Mortgage had been executed in error. (Doc. 10, p. 29).

2.  After the Plaintiff informed the Debtors of the error, the Debtors consulted an attorney. (Doc. 16, Transcript, pp. 16, 20–21).

3.  The Debtors agreed to reinstatement of the Mortgage only if the Plaintiff agreed to reduce the total balance owed, and also agreed to reduce the interest rate contained in the original contract. The Debtors presented their

proposal as "non-negotiable" and "take it or leave it." (Doc. 10, p. 44).

4. The Debtors decided to sell the home in Massachusetts because the Plaintiff did not agree to the terms proposed by them. (Doc. 10, p. 31).

5. After the negotiations with the Plaintiff deteriorated, the Debtors obtained a loan and mortgage from Ukrainian Self Reliance in the amount of $70,000.00. According to the Debtors, the purpose of the loan was to obtain funds to repair and remodel the home. (Doc. 16, Transcript, pp. 21–23).

6. The Debtors did not notify the Plaintiff that they intended to sell the home, and did not contact the Plaintiff after receiving the proceeds from the sale. (Doc. 12, Paragraph 11; Doc. 10, p. 39).

7. The Debtors left the state of Massachusetts and moved to Florida shortly after the sale.

8. The Debtors' average household income before and after the sale ranged from $32,000.00 to $37,000.00 per year. Apart from the sale of the house, the Debtors did not identify any other financial resources from which they would be able to repay the debt to the Plaintiff. (Doc. 10, pp. 9–10).

■ Under these circumstances, the Court finds that the Debtors' failure to remit the sale proceeds to the Plaintiff was the result of a deliberate decision, and was therefore "willful." The Debtors knew that they remained obligated to the Plaintiff, and knew that the Plaintiff was relying on the home in Massachusetts to satisfy the debt, as the parties had originally contracted. When the Plaintiff did not consent to the Debtors' demands to modify the contract, the Debtors remodeled the home and sold it, without notifying the Plaintiff and without arranging an alternative method of payment. See *In re Mar-*

*tin,* 321 B.R. 437, 441 (Bankr.N.D.Ohio 2004)(A debtor's conduct was "willful" where he secretly spent the funds from a check that he knew was not intended for him.)

■ The Court also finds that the failure to remit the sale proceeds to the Plaintiff was "malicious," in that it occurred in conscious disregard of the Debtors' obligations to the Plaintiff, without just cause or excuse. In fact, when asked why they did not remit the sale proceeds to the Plaintiff, the only "excuse" offered by the Debtors was the Plaintiff's rejection of the Debtors' proposal to modify the original mortgage contract. (Doc. 10, p. 38). Further, the Debtor testified that he "was not thinking about" the harm that the Plaintiff would suffer if the Plaintiff did not receive the proceeds from the sale, even though he knew that the debt owed to the Plaintiff had not been paid. (Doc. 10, p. 41). See *In re Martin,* 321 B.R. at 442–43; and *In re Stanley,* 66 F.3d 664, 667–68 (4th Cir. 1995)(The debtor's use of an erroneous $72,000.00 increase in his credit line was a willful and malicious injury.)

The Debtors' failure to remit the sale proceeds to the Plaintiff resulted in a "willful and malicious injury" within the meaning of § 523(a)(6) of the Bankruptcy Code. There are no genuine issues of material fact as to Count I of the Complaint, and summary judgment should be entered in favor of the Plaintiff.

### B. Count II— § 727(a)(5)

Section 727(a)(5) of the Bankruptcy Code provides:

**11 USC § 727. Discharge** (a) The court shall grant the debtor a discharge, unless—

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this para-

graph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(5). Section 727(a)(5) promotes the bankruptcy policy of full disclosure by requiring debtors to adequately explain their insolvency. *In re Perry,* 252 B.R. 541, 549 (Bankr.M.D.Fla.2000).

■ Under § 727(a)(5), the plaintiff has the initial burden to show that the debtor no longer has an asset that he previously owned. Once the plaintiff makes such a showing, the burden shifts to the debtor to provide a satisfactory explanation as to the disposition of the asset. *In re Aoki,* 323 B.R. 803, 817 (1st Cir. BAP 2005).

■ "Vague and indefinite explanations of losses that are based on estimates uncorroborated by documentation are unsatisfactory." *In re Perry,* 252 B.R. at 550(quoting *In re Chalik,* 748 F.2d 616, 619 (11th Cir.1984)). On the contrary, the debtor's explanation "must be supported by some corroboration," and "must be sufficient to eliminate the need for any speculation as to what happened to all of the assets." *In re Aoki,* 323 B.R. at 817.

■ In this case, the Plaintiff met its burden of showing that the Debtors no longer have an asset that they previously owned. Specifically, the record establishes that the Debtors received a check in the amount of $87,101.06 on June 25, 2004, and deposited the check in their account at Bank of America. (Doc. 10, pp. 33, 35). When the Debtors filed their bankruptcy petition less than sixteen months later, however, they scheduled the Bank of America account with a value of $50.00, and they scheduled their total assets at a value of only $13,350.00.

■ The next issue, therefore, is whether the Debtors have explained satisfactorily the disposition of the funds that they received in June of 2004.

When asked how the funds were used, the Debtor provided the following narrative:

Moving from Massachusetts to over here cost us 8,000. I tried to start my own business, to do stucco as a businessman, and it cost me 7,000.

My wife had a dental job. She had severe pain with root canal, and it cost her 1,400. My daughter, Oksana, she fell and broke one tooth, and we had to pay $300.

When we had the first court hearing in Massachusetts, we had to go there— the whole family had to go there because we couldn't leave our children alone. It cost us $3,000.

We bought a vehicle, Oldsmobile, a van. It cost us together with the paperwork $5,500. Before we went to Massachusetts, the van almost broke down, so we had to pay for $1,200 for repairs.

We made a deposit to the landlady where we are living now, $1,600. When we first moved to Massachusetts down here, I was not working, so we figure out that we had to pay for rent, make some purchases because it's Florida, so the total expenses we incurred are $3,500. Our older children went to Massachusetts with their Christian camp, and we had to pay $3,000—

The whole family went to the state of Washington because almost eight years we have not seen her mother, our grandmother, and we spent $6,000.

. . .

I forgot to mention we bought a digital camera for $500. What else? A video camcorder, yes.

. . .

Around 1,000 with insurance, with everything.

(Doc. 10, pp. 33–35). The expenditures described by the Debtor in the narrative total the sum of $41,500.00. The Debtors did not address the remaining $45,601.00 that they received from the sale of the Massachusetts home.

Perhaps more significantly for purposes of § 727(a)(5), the Debtors were unable to produce any meaningful documentation to evidence either their use of the funds as described in the narrative, or any other disbursements made by them in the year preceding the bankruptcy filing.

The Plaintiff conducted a deposition of the Debtors in January of 2006, for example, and requested that the Debtors produce all of their credit card statements and bank statements from March of 2004 to January of 2006, and all receipts and cancelled checks evidencing their use of the sale proceeds. In response to the subpoena calling for these documents, the Debtors produced only one bank statement dated January 11, 2006, and receipts showing only a few hundred dollars in expenditures. (Doc. 10, pp. 22–25, 47).

During the deposition, the Debtors acknowledged that they maintained a Visa credit card during the period in question. They testified that they possessed no credit card statements from March of 2004 through January of 2006, however, because they threw them away. (Doc. 10, p. 23).

Similarly, the Debtors testified that they maintained a bank account at Bank of America, but that they have no statements (other than the January 11, 2006 statement) because "we would get the statement and then throw it away." (Doc. 10, p. 24).

Finally, the Debtors did not produce any receipts or cancelled checks showing any significant expenses or disbursements between March of 2004 and January of 2006. The Debtors testified at the deposition, for example, that they lost their receipts for a concrete mixer and small trailer, and that they may "have something at home," but "cannot find" any receipts for other business expenses that they incurred. (Doc. 10, pp. 47–49). At the hearing on the Plaintiff's Motion for Summary Judgment, the Debtors stated that they "were just spending money on family needs," but did not produce any documentation to corroborate the expenditures. (Doc. 16, Transcript, p. 23).

In other words, the Debtors received the sum of $87,101.06 less than sixteen months before filing their bankruptcy petition. According to their own testimony, this sum represents more than twice the amount of the income that the Debtor earns from his occupation in a year. Nevertheless, the Debtors offered only general descriptions of how they used the money in the sixteen-month period, and were unable to substantiate either major purchases or routine household expenditures during that time. "While bank statements and credit card receipts or monthly statements may be simple records, they 'form the core' of what [is necessary] to ascertain [the Debtor's] financial condition, primarily his use of cash assets." *In re Nemes,* 323 B.R. 316, 325 (Bankr.E.D.N.Y.2005)(quoting *The Cadle Company v. Terrell,* 2002 WL 22075, at *5 (N.D.Tex.), *aff'd* 2002 WL 1973217 (5th Cir.)).

The Court finds that the Debtors failed to explain satisfactorily the loss of the funds received from the sale of the Massachusetts home, and that the Debtors' discharge should be denied pursuant to § 727(a)(5) of the Bankruptcy Code. There are no genuine issues of material fact as to Count II of the Complaint, and summary judgment should be entered in favor of the Plaintiff.

### Conclusion

The matter before the Court is a Motion for Summary Judgment filed by the Plain-

tiff. The Court determines that the Motion should be granted, and that summary judgment should be entered in favor of the Plaintiff as to both Counts of the Complaint.

Under the circumstances established by the record, the Court finds that the Debtors willfully and maliciously injured the Plaintiff by failing to remit the sale proceeds from the Massachusetts home to the Plaintiff. Consequently, the debt owed to the Plaintiff should be nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code.

Further, the Debtors failed to satisfactorily explain how they used the funds received from the sale of the Massachusetts property. The Debtors offered only indefinite descriptions of how the funds were used, and furnished virtually no documentation to corroborate their explanations. Consequently, the Debtors' discharge should be denied pursuant to § 727(a)(5) of the Bankruptcy Code.

Accordingly:

**IT IS ORDERED** that:

1. The Motion for Summary Judgment filed by the Plaintiff, Washington Mutual Bank, is granted.

2. Summary judgment should be entered in favor of the Plaintiff, Washington Mutual Bank, and against the Debtors, Sergey Dubovoy and Yuliya Dubovoy, on Count I of the Complaint, and the debt owed by the Debtors to the Plaintiff is determined to be nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code.

3. Summary judgment should be entered in favor of the Plaintiff, Washington Mutual Bank, and against the Debtors, Sergey Dubovoy and Yuliya Dubovoy, on Count II of the Complaint, and the Debtors' discharge is denied pursuant to § 727(a)(5) of the Bankruptcy Code.

4. A separate Summary Judgment shall be entered consistent with this Order.