**In re David McGUCKIN, Debtor.**

**Shirley Knowles, Plaintiff**

v.

**David McGuckin, Defendant.**

**Nos. 08–3335, 08–33736.**

United States Bankruptcy Court, N.D. Ohio.

June 5, 2009.

252

James Terrance Murray, Sandusky, OH, for Plaintiff.

Charles P. Derby, Norwalk, OH, for Defendant.

### *DECISION AND ORDER*

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to De-

termine Dischargeability. For her complaint, the Plaintiff relies on 11 U.S.C. § 523(a)(6) which excepts from discharge any debt arising as the result of a "willful and malicious" injury caused by the debtor. Also heard at the time of the Trial were matters related to the Defendant's Motion for Sanctions. At the conclusion of the Trial, the Court took the matter under advisement so as to afford the opportunity to thoroughly consider the evidence submitted to the Court. The Court has now had this opportunity and, for the reasons set forth in this decision, finds that the debt in controversy is Dischargeable.

## FACTS

The Debtor/Defendant, David A. McGuckin (hereinafter the "Debtor"), is a single, middle-age man. For the past 30 years, the Debtor has worked as a salesman.

In 1989, the Debtor entered into an agreement for the lease of a residence owned by the Plaintiff, Shirley Knowles, and her husband, James Murray. (Ex. No. 1). This premise, located in close proximity to the residence of the Plaintiff and her husband, sits adjacent to Lake Erie. During the duration of their relationship, the Plaintiff and her husband only visited their rental property intermittently.

The Parties' lease agreement, originally for a fixed term, became a periodic tenancy, from month to month, after the Debtor held over his term. The month to month tenancy lasted until May of 2005, when the Plaintiff served the Debtor notice that their lease arrangement was being terminated. In this notice of termination, the Debtor was afforded 90 days to vacate the premises. Some short extensions to vacation were subsequently agreed upon by the Parties, but on September 30, 2005, the Plaintiff filed a formal state-court complaint to evict the Debtor. Pursuant to this complaint, a writ of restitution was issued, ordering the Defendant to vacate the Plaintiff's premise by October 11, 2005. (Ex. No. 2).

Shortly after October 11, 2005, the Plaintiff, and her husband Mr. Murray, re-entered their rental property. They found the property in a state of disrepair. On October 16, 2005, pictures were taken of the property. These pictures show a filthy residence, both inside and outside, with conspicuous amounts of garbage and many of the Debtor's personal belongings strewn about the property. The pictures also show general damage to the property including water damage throughout caused from a leaking roof. Much of the property's carpets and flooring were also in deplorable condition.

Based upon the condition of the property, the Plaintiff brought an action against the Debtor in state court for damages. In this action, the Debtor filed a counterclaim, seeking damages for the Plaintiff's refusal to allow the Debtor access to his personal property. (Ex. No. 6). The Debtor's counterclaim was subsequently dismissed, and judgment for the Plaintiff was entered on her claim for damages.

In rendering judgment for the Plaintiff on the matter of damages, the state court made the following determinations: (1) for "exterior clean up," the Debtor was liable for damages in the amount of $6,440.00; (2) for "interior clean up," the Debtor was liable for damages in the amount of $4,140.00; and finally (3) "for interior repairs," the Debtor was liable for damages in the amount of $7,000.00. (Ex. No. 2). The state court, however, also found that a portion of the Plaintiff's claim for damages arose from noncompensable ordinary wear and tear. *Id.* Additionally, the state court found that the Debtor was not liable for certain claims for repairs made by the Plaintiff, including that of the water dam-

age caused by the leaking roof, with it being determined that the duty to maintain the roof fell upon the Plaintiff. *Id.*

After the dismissal of a prior bankruptcy filing, the Debtor commenced this bankruptcy case on July 16, 2008. In this bankruptcy filing, the Debtor disclosed $26,699.95 in unsecured, nonpriority debt. Approximately half of this amount, $13,000.00, represented the claim held by the Plaintiff. In his bankruptcy filing, the Debtor also disclosed a potential claim against the Plaintiff for the conversion of his personal property. Among the items of personalty: a boat, a tiki bar and a washer and dryer.

In October of 2008, the Plaintiff commenced the matter now before the Court, seeking to except from discharge the Debtor's liability for breaching his duties as a lessee. (Doc. No. 1). Plaintiff's husband, Mr. Murray who is a licensed attorney in Ohio, personally served the complaint upon the Debtor. Thereafter, the Debtor filed a Motion for Sanctions, seeking to hold the Plaintiff and her husband in contempt for violating the automatic stay of 11 U.S.C. § 362. (Doc. No. 7).

## DISCUSSION

Before this Court are two matters: the Plaintiff's Complaint to Determine Dischargeability; and the Defendant/Debtor's Motion for Sanctions alleging a violation of the automatic stay of 11 U.S.C. § 362. Both these matters are deemed under bankruptcy law to be core proceedings. 28 U.S.C. § 157(b)(2)(G)/(I). Accordingly, on these matters, Congress has conferred upon this Court the jurisdictional authority to enter final orders and judgments. 28 U.S.C. § 157(b)(1).

The first matter before the Court is the Plaintiff's Complaint to Determine Dischargability. For her complaint, the Plaintiff alleges that the Debtor willfully and maliciously damaged her rental property, thereby making the Debtor's liability for the damage nondischargeable pursuant to the exception to discharge set forth in 11 U.S.C. § 523(a)(6). This provision states:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

The "willful and malicious injury" exception to dischargeability as set forth in § 523(a)(6) is one of the oldest known in American bankruptcy jurisprudence—being part of the original Bankruptcy Act of 1898—and is aimed at the type of both socially and morally reprehensible conduct that is not deserving of the fresh-start policy which underlies the Bankruptcy Code. *Superior Metal Products v. Martin (In re Martin),* 321 B.R. 437, 440 (Bankr. N.D.Ohio 2004). As with other exceptions to dischargeability, it is the movant's burden to establish, by at least a preponderance of the evidence, the applicability of § 523(a)(6). *Grange Mut. Cas. Co. v. Chapman (In re Chapman),* 228 B.R. 899, 906 (Bankr.N.D.Ohio 1998). In an action brought under § 523(a)(6), this means demonstrating that the debtor's conduct was both "willful" and "malicious." *Graffice v. Grim (In re Grim),* 293 B.R. 156, 167 (Bankr.N.D.Ohio 2003).

Neither the term "willful" nor "malicious" is defined by the Bankruptcy Code. But in the case of *Kawaauhau v. Geiger,* the Supreme Court of the United States addressed their scope. 523 U.S. 57, 118 S.Ct. 974, 975, 977, 140 L.Ed.2d 90, 92 (1998). The issue before the Court in *Kawaauhau v. Geiger* was whether "§ 523(a)(6)'s compass cover acts, done intentionally, that cause injury, or only acts

done with the actual intent to cause injury?" *Id.* at 61, 118 S.Ct. 974. (internal parentheticals omitted). Put differently, the Court in *Kawaauhau v. Geiger* was asked to decide whether the mens rea requirement of § 523(a)(6) looked only to the general intent of the debtor, or instead required a specific intent to cause harm.

In coming to a decision, the Court in *Kawaauhau v. Geiger* linked the mental state of § 523(a)(6) with that required of intentional torts, finding that § 523(a)(6) required a specific intent to cause injury. In the Court's words: "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself'" *Id.* at 61–62, 118 S.Ct. 974.

This restrictive reading, the Court also found, avoided undesirable results:

[the] more encompassing interpretation could place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, *i.e.,* neither desired nor in fact anticipated by the debtor. Every traffic accident stemming from an initial intentional act-for example, intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic-could fit the description. A knowing breach of contract could also qualify. A construction so broad would be incompatible with the well-known guide that exceptions to discharge should be confined to those plainly expressed.

*Id.* at 62, 118 S.Ct. 974 (internal quotations and citations omitted).

■ In this matter, the photographs submitted into evidence lack any meaningful indication that the damage caused to the Plaintiff's property arose from overt acts. For example, there were no large holes in any walls, no windows appear to have been broken, and all fixtures were essentially intact. Some of the trash was also organized into piles. When set within the framework of *Kawaauhau v. Geiger,* this makes it difficult to construe the Debtor's actions as both "willful and malicious." Other considerations further support this position.

First, from an evidentiary standpoint, there exists the question of exclusive control. At the latest, the Debtor vacated the Plaintiff's property on October 11, but the Plaintiff did not reenter the property until October 16. During this five-day window, serious questions arose at the Trial as to whether other parties had access to the property, thereby casting doubt as to the Debtor's sole responsibility for the condition of the Plaintiff's property as represented by the photographs submitted into evidence.

Even this aside, it cannot be ignored that the Debtor lived in the Plaintiff's property for a long time—approximately 16 years. *See In re Peterson,* 332 B.R. 678 (Bankr.D.Del.2005) (extensive damage from debtor's dogs resulting from activity occurring repeatedly over long period of time, was dischargeable debt). The Plaintiff also rarely inspected the property or made any improvements to the property. Additionally, as the state court found, some of the damage caused to the property—particularly, the water damage—cannot be attributed to the Debtor, having arisen from the Plaintiff's failure to repair the property's roof. The overall deterioration of the Plaintiff's property, thus, cannot be entirely placed on the Debtor's shoulders.

This is not to downplay the damage caused by the Debtor. The Plaintiff's property, at the time the Debtor complet-

ed his departure, was not in a habitable condition. To give a few examples: The bathroom and kitchen do not appear as if they had been seriously cleaned in years. Dirty dishes and rotten food were present. Trash and other debris had also accumulated in unusually high volumes throughout the Plaintiff's residence.

In sum, the Debtor left the Plaintiff's property in a condition that was reminiscent of scenes from the movie "Animal House."[1] This motif rings especially true given that the Debtor appears to have had a penchant for alcohol, with the pictures submitted into evidence showing not only a tiki bar, but a variety of bottles of beer and other intoxicants lying around the premises. Most disturbing, one of the pictures shows prominently displayed, almost as if a badge of honor, a red and yellow Ohio license plate which is issued by the state for serious drunk driving offenses. *See* O.R.C. § 4503.231.

Still, whatever his vices, the Court cannot discern on the part of the Debtor anything more than neglect, albeit serious neglect, concerning the Plaintiff's property. Since *Kawaauhau v. Geiger*, however, it has been recognized that a debtor's negligence in failing to maintain a rental property will not be, without more, sufficient to support a claim of nondischargeability under 11 U.S.C. § 523(a)(6). *See Cutler v. Lazzara (In re Lazzara)*, 287 B.R. 714 (Bankr.N.D.Ill.2002) (collecting cases). In this regard, persons intending to cause harm do not normally do so by passive acts, such as failing to properly clean and maintain another's property. *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1181–82 (8th Cir.2008).

Instead, the specific intent standard espoused in *Kawaauhau v. Geiger* will normally be accompanied by overt acts, or something closely akin thereto—*e.g.*, purposely failing to act in order to produce a desired consequence. *In re Patch*, 526 F.3d at 1182. The facts presented in *Kawaauhau v. Geiger* are particularly illustrative as the degree to which a debtor may cause a person injury, but still be found not to have acted willfully and maliciously.

In *Kawaauhau v. Geiger*, the creditor suffered an injury to her foot. The debtor was the treating physician. To minimize expenses for the creditor, the debtor sought to treat a potential infection with oral antibiotics, in lieu of using intravenous antibiotics which, although more expensive, would have been more effective. The debtor then departed on a business trip, leaving the creditor in the care of other physicians.

An infection thereafter developed in the creditor's leg and it was decided that the creditor should be transferred to an infectious disease specialist. Despite this, when the debtor returned from his business trip, he canceled the transfer and discontinued all antibiotics, believing that the infection had subsided. It had not, and the creditor's condition deteriorated, eventually requiring amputation of her leg below the knee. While clearly constituting a case of medical malpractice, the Court in *Kawaauhau v. Geiger* found that, under its enunciated standard for § 523(a)(6), the debt arising from this injury was dischargeable, having arisen from negligence on the part of the debtor, not a 'willful and malicious' act.

In this matter, the Court is under no illusion that the Debtor's neglect, and obvious lack of skills involving personal hygiene, resulted in the Plaintiff's property being damaged well beyond that of ordinary wear and tear, thereby making the

---

1. National Lampoon's Animal House (Universal 1978).

large assessment of damages by the state court a necessity. But as the facts of *Kawaauhau v. Geiger* show, the severity of an injury cannot serve as an independent basis to find a debtor's conduct 'willful and malicious.' The focus, instead, must remain on whether the debtor, in causing injury, possessed the specific intent to cause harm.

Consequently, while the Court does find the Debtor's neglect of his duties as a tenant deplorable, the Court, in the absence of any meaningful evidence of damage caused by overt acts, is not satisfied that the Plaintiff has sustained her burden of showing that the Debtor, in causing damage to the Plaintiff's property beyond that of ordinary wear and tear, acted 'willfully and maliciously' for purposes of § 523(a)(6). *See Mathes v. Woolner (In re Woolner)*, 109 B.R. 250, 254 (Bankr. E.D.Mich.1990) (mere neglect of property which causes a diminution in value is not willful or malicious for purposes of 11 U.S.C. § 523(a)(6)). *See also In re Feist*, 225 B.R. 450 (Bankr.D.N.D.1998) (unauthorized removal of fixtures does not automatically give rise to a nondischargeable debt). The Court now turns to address the Debtor's Motion for Sanctions.

The Debtor, for his Motion for Sanctions, alleges that the Plaintiff and her husband violated the automatic stay of 11 U.S.C. § 362. The automatic stay takes effect when a petition for bankruptcy relief is filed. 11 U.S.C. § 362(a). Generally stated, the automatic stay stops all collection activities related to the recovery of a prepetition debt against the debtor. 11 U.S.C. § 362(a). When a creditor is found to have "willfully" violated the automatic stay of § 362(a), sanctions may be imposed. 11 U.S.C. § 362(k).

In support of his claim for sanctions, the Debtor made what can be grouped into two allegations. First, the Debtor contends that the Plaintiff and her husband harassed him, pointing to the instant adversary proceeding as a specific example of the harassment. Second, the Debtor alleged that the Plaintiff, during the eviction process, improperly seized a substantial amount of the Debtor's personal property. *Id.*

■ Regarding the first allegation, harassment, the acts for which the Debtor complains all have a common denominator: they involve the Plaintiff and her husband exercising their legal rights within the confines of the Bankruptcy Code. For example, the Debtor made much of the Plaintiff's husband coming to his residence to serve the complaint commencing this action. The Debtor also set forth in his Motion for Sanctions that, in pursuing their nondischargeability action, the Plaintiff's husband had "on more than one occasion since the filing of Petition, been present [sic] near Defendant's property, taking photographs and causing annoyance to Defendant and others in the premises which are defendant's current residence." (Doc. No. 7).

■ It is well-settled, however, that the automatic stay of § 362(a), while protecting a debtor from a creditor's collection efforts, does not prevent a creditor from exercising their legal rights within the confines of the Bankruptcy Code. As this Court previously explained:

> The injunction of § 362, then, serves as a mechanism for this court to control creditor action and encourages creditors to come to this court to resolve their claims. While the automatic stay is intended to temporarily protect a debtor from lawsuits and collection efforts by creditors outside the bankruptcy court, the court finds no legislative intent to prohibit creditors from bringing actions

in the bankruptcy court where the debtor has filed his petition:

> Although § 362(a) generally bars all debt collection efforts against the debtor or the property of his bankruptcy estate after the filing of the petition, the stay implicitly does not bar a party from commencing an adversary or contested proceeding against the debtor under the caption of the bankruptcy case in the court where the petition is pending.

*Harchar v. United States (In re Harchar),* 393 B.R. 160, 179 (Bankr.N.D.Ohio 2008), *quoting Ameritrust Co. v. Opti–Gage, Inc. (In re Opti–Gage, Inc.),* 130 B.R. 257, 258–59 (Bankr.S.D.Ohio 1991).

■ Consequently, while the Debtor may find the conduct of the Plaintiff and her husband since the commencement of this adversary proceeding disagreeable, the Court will not read those acts taken by the Plaintiff and her husband surrounding this proceeding to be a violation of the stay. When considering the extent of the damage to her property, the Debtor simply had no right to expect that the Plaintiff would not exercise her legal right to seek a determination of nondischargeability. In any event, even if the Plaintiff and her husband did, in exercising their legal rights, engage in improper conduct, the Debtor's recourse lay elsewhere, not through bringing an action under § 362(a). For example, Bankruptcy Rule 9011 provides recourse when a matter is "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Bankr.P. 9011(b)(1).

■ For his second allegation in support of a stay violation, the Debtor put forth that the "Plaintiff, during the eviction process, improperly seized a substantial amount of the Debtor's personal property." (Doc. No. 7). This allegation was at the core of the Debtor's counterclaim in the state-court eviction proceeding. (Ex. No. 6). The state court, however, dismissed the Debtor's counterclaim. Thus, whatever the actual merits of his claim, the matter, having been already decided against the Debtor, is *res judicata* in this Court. Even if not the case, the acts giving rise to the Debtor's allegation of an improper seizure of his personalty all occurred prepetition. Therefore, as the automatic stay does not arise until the filing of a petition in bankruptcy, the Plaintiff's actions regarding the Debtor's personal property, even if wrongful, could not have resulted in a stay violation.

In sum, the Court, based upon the evidence before it, cannot discern any damage to the Plaintiff's rental property which arose from contrived and/or overt acts on the part of the Debtor to cause harm. Consequently, while it cannot be disputed that the Debtor left the Plaintiff's property in a condition hardly befitting a man of his age and profession, the Court is unwilling to make the leap that the Debtor acted with the specific intent to damage the property so as to make the damages a nondischargeable debt under § 523(a)(6). Conversely, the Court cannot find any meaningful evidence to support the Debtor's position that either the Plaintiff or her husband violated the automatic stay of § 362(a).

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Plaintiff's Complaint to Determine Dischargeability, be, and is hereby, DISMISSED.

***IT IS FURTHER ORDERED*** that any obligation of the Debtor, David McGuckin, to the Plaintiff, Shirley Knowles, arising

from the Parties' lease relationship, be, and is hereby, determined to be a DISCHARGEABLE DEBT.

***IT IS FURTHER ORDERED*** that the Debtor's Motion for Sanctions, be, and is hereby, DENIED.