NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0483n.06

Case No. 21-1250

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Oct 26, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| In re: GENE M. KIRVAN, | ) | |
| | ) | |
| Debtor, | ) | |
| _____ | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| CAMP INN LODGE, LLC, | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GENE M. KIRVAN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: GILMAN, THAPAR, and NALBANDIAN, Circuit Judges.

THAPAR, Circuit Judge. Like many cliches, there is wisdom in the adage that it is dangerous to mix business and pleasure. This case—which concerns the breakup of both an employment relationship and a personal one—shows why. We are asked who to believe. But appellate judges do not second-guess the credibility determinations of lower courts in the absence of clear error. Because we see no clear error, we affirm.

I.

Gene Kirvan and Deborah Wiltse were dating when Wiltse came across a business opportunity: A motel and restaurant in northern Michigan was for sale. She had experience

running a restaurant, and Kirvan had experience managing motels. So she bought the motel, named it Camp Inn, and hired Kirvan to work there with her. Kirvan managed the hotel staff and worked with Monsignor James Brucksch, a retired Catholic priest and Wiltse's family friend, to do Camp Inn's accounting. There was little oversight of Kirvan's recordkeeping.

A few years later, Kirvan and Wiltse broke up. Wiltse fired Kirvan and looked into Camp Inn's accounting. When she did, she noticed some inconsistencies. So she hired an accountant, Cynthia Scott, to investigate. Scott found the records in poor shape and discovered that Kirvan used a somewhat unreliable computer system called Room Master (which mainly tracked room assignments and cleaning schedules). But she did an extensive report on Camp Inn and uncovered what she believed to be fraud. Wiltse told police that Kirvan had embezzled from the business, but prosecutors didn't pursue a case against Kirvan for long.

Kirvan later filed for Chapter 13 bankruptcy. Camp Inn brought an adversary proceeding, claiming that Kirvan had embezzled more than $50,000.[1] The bankruptcy court agreed. It found that Kirvan had unlawfully taken money from Camp Inn and imposed treble damages.[2] It also held that the debt was nondischargeable under the exceptions for embezzlement and for willful and malicious injury. *See* 11 U.S.C. § 523(a)(4), (6). In other words, Kirvan's bankruptcy filing couldn't wipe away his debt to Camp Inn. Kirvan appealed to the district court. It affirmed.

---

[1] Like the district court, we recognize that the bankruptcy court mentions two different numbers: $59,752.45 and $55,847.45. *See* Bankruptcy Op. at 2, 7, 8, 18. We affirm based on the number explicitly awarded in its opinion: $55,847.45. *Id.* at 18.

[2] Kirvan's brief includes a footnote arguing that the bankruptcy court should not have trebled the damages because it was applying federal law. Appellant's Br. at 34 n.1. But he did not develop that argument. Nor did he raise it before the district court. So we decline to review it now. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (cleaned up)).

II.

On appeal, Kirvan claims that the bankruptcy court erred by concluding that Kirvan embezzled money from, and willfully and maliciously injured, Camp Inn. We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *Rizzo v. Michigan (In re Rizzo)*, 741 F.3d 703, 705 (6th Cir. 2014).

*Embezzlement.* Bankruptcy's proceedings generally wipe the slate clean for debtors, or allow them to restructure their debts. But there are exceptions. The first exception that Camp Inn claims here is embezzlement. In bankruptcy proceedings, we apply federal common law's definition of embezzlement. *See Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172–73 (6th Cir. 1996); *see also Moore v. United States*, 160 U.S. 268, 269 (1895) (defining embezzlement as "the fraudulent appropriation of property by a person to whom such property has been intrusted, or into whose hands it has lawfully come"). To prove that Kirvan embezzled money, Camp Inn needed to show that (1) it had entrusted the money to Kirvan; (2) Kirvan appropriated the money for a use other than what it was entrusted for; and (3) the circumstances indicate fraud. *See In re Brady*, 101 F.3d at 1173. Camp Inn proved all three elements.

Kirvan was entrusted with cash as part of the accounting process for Camp Inn. Kirvan would take the money from Camp Inn's desk clerks and prepare a deposit slip each day. Then he passed along an envelope, with the day's cash and the slip he prepared, to Monsignor Brucksch. Brucksch next deposited the money into Camp Inn's bank account. So Kirvan was responsible for the cash from the time the clerks gave it to him until he gave it to Brucksch. This responsibility shows Kirvan was entrusted with the cash. *See Oxford English Dictionary Online* (3d ed. 2018) (defining "entrust" as "assign the responsibility for something valued or important").

But instead of delivering the cash receipts to Monsignor Brucksch, Kirvan took some of the money for himself. The bankruptcy court found Camp Inn proved this based on three types of evidence. First, fraud-examiner Cynthia Scott investigated Camp Inn's finances. She used the Room Master software program to determine that tens of thousands of dollars were missing. Second, Camp Inn presented evidence of Kirvan's finances. It showed that he was living beyond his means. His reported income was close to his known expenses—but "known expenses" left out necessary day-to-day purchases like food, gas, and clothing. Including those purchases must have brought Kirvan's total spending well above his reported income. And finally, Kirvan had disposed of many of the "drop sheets" used by the desk clerks to track daily cash and credit-card receipts. Wiltse hired Scott to investigate after she found some drop sheets in an unmarked envelope in the trash. Scott found so many of the daily records were missing drop sheets that they couldn't be used in her investigation, and the desk clerks reported they had seen drop sheets in Kirvan's trash can. The bankruptcy court found that all of this pointed to one conclusion: Kirvan had pocketed money from Camp Inn when he was supposed to be passing it along to Monsignor Brucksch.

And the circumstances of the case point to fraud. Because a defendant "will rarely admit" his fraudulent intentions, courts often use circumstantial evidence to determine subjective intent. *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 282 (6th Cir. 1998). Kirvan never told Wiltse or Brucksch that he was taking cash from the envelopes he received. He threw away drop sheets that could have revealed his scheme. And by passing along the envelopes to Brucksch, he represented that all of Camp Inn's cash receipts were included. Simply put, he concealed what he was doing. This evidence "leads to the conclusion" that Kirvan had no "intention to repay" Camp Inn, and thus acted fraudulently. *See id.* (citation omitted). In short,

the evidence supports the bankruptcy court's finding that Kirvan embezzled from Camp Inn, making his debt nondischargeable under § 523(a)(4).

Kirvan does not contest Camp Inn's accounting process. Instead, he argues that his temporary "pass-through" role is not enough to show he was entrusted with the money. *See* Appellant's Br. at 37. But this is unavailing—Kirvan still had lawful possession of the cash for a short time. And the law recognizes entrustment in temporary situations like this one. For example, a federal statute punishes any postal-service worker who "embezzles any letter, postal card, package, bag, or mail . . . entrusted to him." 18 U.S.C. § 1709. No doubt the postal worker is not intended to be the permanent holder of the letters he delivers. He is merely *entrusted* with them for the purpose of delivering them to others. So too with Kirvan.

Kirvan also contends that the bankruptcy court lacked enough evidence to show that he actually took money from Camp Inn. Since he argues that we should reverse the bankruptcy court's finding on all three sources of evidence, we will examine each of its findings in turn.

First, Cynthia Scott's testimony. Kirvan claims that because Scott relied on Room Master, and Room Master's numbers were unreliable, the bankruptcy court erred in finding her testimony credible. He is right that Room Master's daily reporting was far from perfect. Indeed, Scott turned to Room Master only because so many drop sheets were missing. But she conducted several tests that led the bankruptcy court to conclude the software was "sound enough to support her opinions." Bankruptcy Op. at 17. First, she looked to Camp Inn's credit-card transactions for a point of comparison. She did spot checks to see if individual days' transactions matched between Room Master and the bank deposits. She also reviewed the total credit-card transactions for all of 2015 both in Room Master and on the bank deposits. She found that the totals were nearly identical— off by only $900, or 0.28%. This is a far cry from the $55,847.45 discrepancy between Room

Master and the bank's records for cash payments. Finally, Scott looked into the cash receipts from the months after Kirvan was fired; she found that once he left, the bank deposits started to match Room Master's reports. And Kirvan provided no competing expert testimony to undermine the credibility of Scott's tests. Together, this shows that while Room Master might have been imperfect, it was not beyond redemption. So reviewing the bankruptcy court's reliance on Scott's reports and testimony, we are not "left with the definite and firm conviction that a mistake has been committed." *EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, 978 F.3d 418, 428 (6th Cir. 2020) (citation omitted).

Next, Kirvan's financial records. He contends that he wasn't living beyond his means—he simply spent little on things like food and clothing, and his available funds were more than Camp Inn presented. Kirvan says he held large cash reserves (more than $14,000) no one else knew about. And he testified that he received unreported bonuses from his previous job, along with extra income and gratuities from a charter fishing business. Camp Inn refutes this story. It noted that when he got divorced in 2011, he reported having less than $4,000. Kirvan's previous employer denied ever paying him cash bonuses. And his charter fishing business consistently lost money—more than $10,000 per year. Kirvan's response? Just his own word, with no supporting documents, records, or witnesses. The bankruptcy court didn't find it credible. Nor will we.

Finally, the missing drop sheets. Kirvan says he had nothing to do with them. He highlights that no one saw him place them in the trash, that the sheets seen in the trash could have been blanks or drafts with mistakes, and that others used the same trash can. He also notes that the room where the completed drop sheets were stored wasn't locked. But the key is what he fails to do—offer an alternative. Kirvan gave no plausible story about why anyone else would have removed the drop sheets from Camp Inn's files. What's more, Wiltse testified that she found drop

sheets *in envelopes* discarded in Kirvan's trash can, prompting her to start looking into potential fraud. Why would a desk clerk who had made a mistake place the erroneous sheet in an envelope before discarding it? If someone else was discarding the drop sheets, who? And why? Kirvan gives no answers to these questions. This was critical to the bankruptcy court's decision, and we find it persuasive now. Although the court noted its finding that Kirvan threw out drop sheets was a close one, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). Because the bankruptcy court's view was permissible, we will not reverse it.

On the question of fraudulent intent, Kirvan also argues Camp Inn has not met its burden. He claims that Room Master cannot alone prove the requisite intent. And he says his efforts to use a paper accounting system were motivated by a desire to benefit Camp Inn—not to facilitate any fraud. Kirvan is right that Room Master cannot, without more, prove he acted with any particular state of mind. That is why Camp Inn supplemented the software's numerical accounting with other evidence—namely, Kirvan's own financial status, the missing drop sheets, and his interactions with Wiltse and Brucksch—that suggests he was covering up stolen cash. Ultimately, the trier of fact faced two competing stories. On the one hand, the defendant claimed his intent was to help the business. On the other, Camp Inn's circumstantial evidence showed he pocketed cash and tried to cover it up, suggesting fraudulent intent. Tasked with evaluating these stories, the bankruptcy court found that the defendant was not credible and Camp Inn's evidence was. These credibility determinations come down to who we should believe—and that is a question best left to the bankruptcy court.

Finding Kirvan's objections unpersuasive, we affirm the bankruptcy court's finding that his debt is nondischargeable under the § 523(a)(4) embezzlement exception.

*Willful and Malicious Injury.* The second ground Camp Inn asserts for not discharging its debt is the exception for willful and malicious injury to another or to the property of another. 11 U.S.C. § 523(a)(6).[3] To prove this exception, Camp Inn must show that (1) there was an injury; and (2) Kirvan's subjective intent was willful and malicious. *See MarketGraphics Rsch. Grp. v. Berge (In re Berge)*, 953 F.3d 907, 914–15 (6th Cir. 2020). Camp Inn has met its burden on both fronts.

First, the injury. As discussed above, the bankruptcy court found that Kirvan took cash from Camp Inn, a finding we leave undisturbed on appeal. So Kirvan deprived Camp Inn of its lawful property. This deprivation establishes an injury under § 523(a)(6). *See, e.g.*, *XL/Datacomp, Inc. v. Wilson (In re Omegas Grp.)*, 16 F.3d 1443, 1451–52 (6th Cir. 1994) (recognizing monetary harm as an "injury" under § 523(a)(6)).

Second, Kirvan's subjective intent. Our circuit recently held that the subjective-intent inquiry is two-pronged: Camp Inn must show that Kirvan acted both willfully *and* maliciously. *In re Berge*, 953 F.3d at 914–15. The bankruptcy court did not explicitly apply *In re Berge*'s two prongs in finding that Kirvan acted willfully and maliciously. Instead, it found only that Kirvan "must have known" that taking Camp Inn's money would cause Camp Inn financial loss. Bankruptcy Op. at 15. But applying the proper test reveals the same: The circumstances of the offense show that Kirvan acted both willfully and maliciously.

To meet the "willful" component, Kirvan must have "desired the consequences of his act, or . . . believed that the consequences were substantially certain to result from it." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999) (cleaned up). The circumstances

---

[3] No one contests that the exception for willful or malicious injury to another, including monetary injury, applies to Kirvan under Chapter 13. *See* 11 U.S.C. §§ 1328(c)(2), 523(a)(6). So we do not consider any limitation on nondischargeability that might be raised based on § 1328(a)(4).

here show that he did. In taking money from Camp Inn's cash receipts, Kirvan necessarily believed that Camp Inn would be deprived of that same money. There was no question that Camp Inn's injury (losing the cash) would result from Kirvan's actions (taking the cash).

But willfulness alone is not enough—Kirvan must have also acted maliciously. Malice requires acting "in conscious disregard of one's duties or without just cause or excuse." *In re Berge*, 953 F.3d at 915 (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)). Here, Kirvan disregarded his duty to pass the cash receipts on to Monsignor Brucksch for deposit. And he had no just cause or excuse for taking the money, because there was no legal reason for him to do so. *See id.* at 915–16 (citing *Black's Law Dictionary* (11th ed. 2019)) (defining "just cause" and "excuse"). Wiltse, the lawful owner of Camp Inn's cash receipts, never authorized Kirvan to take cash income as payment or for any other reason.

Properly analyzing Kirvan's subjective intent under the two-pronged standard, we hold that he acted both willfully *and* maliciously. Thus, the debt is nondischargeable under § 523(a)(6).

### III.

Finally, Kirvan challenges the admission of Cynthia Scott's expert testimony. We review the bankruptcy court's decision to admit expert testimony for abuse of discretion. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008). To admit expert testimony, a court must find the opinion is relevant, reliable, and offered by a qualified witness. *Id.* at 528–29. Kirvan challenges only the reliability of Scott's opinion, so we look to whether (1) her testimony was based on "sufficient facts or data," (2) it was the "product of reliable principles and methods," and (3) Scott "has applied the principles and methods reliably to the facts of the case." *See id*. at 529 (quoting Fed. R. Evid. 702). The bankruptcy court was within its discretion in finding all three elements here.

Kirvan claims that Scott's opinion was unreliable because Room Master was its "sole basis," and that it lacked the scientific foundation to qualify as more than just lay testimony. Appellant's Br. at 53–54. But that is not the case. Scott did rely on Room Master, but she also interviewed employees and examined Camp Inn's bank statements and physical records. *See* Bankruptcy Op. at 6–8. And the conclusions she drew from her investigation were more than "merely [] a comparison of numbers." Appellant's Br. at 53. Scott used her background as a certified public accountant and a certified fraud examiner to draw conclusions from Camp Inn's accounting practices and records. This is far more than "unsupported speculation." *In re Scrap Metal*, 527 F.3d at 530. And even if the factfinder were persuaded by Kirvan's claim that Room Master's reports were erroneous, it is not an abuse of discretion to admit expert opinion "based on allegedly erroneous facts when there is some support for those facts in the record." *Id.* Thus, the bankruptcy court did not abuse its discretion in finding Scott's testimony reliable.

*   *   *

Kirvan asks us to place ourselves in the trial courtroom and reassess his—and other witnesses'—credibility. But that is not our role as appellate judges. Finding no clear error below, we affirm.